## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDDIE J. RATLIFF** | **CIVIL ACTION NO.  2:17-cv-11581** |
| **Plaintiff,** | |
| **VERSUS** | **SECTION "E" (1)** |
| **SEADRILL AMERICAS, INC.** | **DISTRICT JUDGE** |
| **Defendant.** | **   SUSIE MORGAN** |
| | **MAGISTRATE JUDGE** |
| | **   JANIS VAN MEERVELD** |

### JOINT PRE-TRIAL ORDER

### PRE-TRIAL CONFERENCE

### I.

A Pre-Trial Conference will be held on the 9th day of May, 2019 at 9:00 A.M. before Judge

Susie Morgan.

### APPEARANCE OF COUNSEL

### II.

A.    **TIMOTHY J. YOUNG (22677)**
      **TAMMY D. HARRIS (29896)**
      **MEGAN C. MISKO (29803)**
      **JOSEPH B. MARINO, III (29966)**
      The Young Firm
      400 Poydras St., Suite 2090
      New Orleans, LA  70130
      Telephone:  (504) 680-4100
      Fax:  (504) 680-4104
      Email: tjy@theyoungfirm.com
      tdh@theyoungfirm.com
      mcm@theyoungfirm.com
      jbm@theyoungfirm.com
      *Attorneys for Plaintiff, Eddie Ratliff*

B.      **GARY A. HEMPHILL, LA BAR 6768**
        **MICHAEL F. HELD, LA BAR 37466**
        PHELPS DUNBAR LLP
        365 Canal Street, Suite 2000
        New Orleans, LA  70130-6534
        Telephone: 504-566-1311
        Telecopies: 504-568-9130
        Email: gary.hemphill@phelps.com
               meredith.blanque@phelps.com
               heldm@phelps.com
        *Attorneys for Defendant, Seadrill Americas, Inc.*

## DESCRIPTION OF THE PARTIES

### III.

**Plaintiff, Eddie Ratliff:**

Plaintiff is Eddie Ratliff, a resident of Collins, Mississippi.  At all material times, Plaintiff was employed by Defendant, Seadrill Americas, Inc. as a Jones Act seaman and assigned to M/V WEST VELA as a member of the crew of the vessel.

**Defendant, Seadrill Americas, Inc.:**

Defendant, Seadrill Americas, Inc., was the employer of Plaintiff Eddie Ratliff.

## JURISDICTION

### IV.

This matter falls within the Court's admiralty jurisdiction.  Plaintiff's negligence claims against Seadrill Americas, Inc. are based on the Jones Act, 46 U.S.C. § 30104 *et seq*. and the general maritime law.  Plaintiff is a Jones Act seaman and his alleged incident and injury occurred aboard the M/V WEST VELA, thereby supporting this Court's admiralty jurisdiction.

## PENDING MOTIONS

### V.

**Plaintiff, Eddie Ratliff:**

Plaintiff intends to file a Motion *in Limine* to Exclude as untimely the designation and purported testimony of defendant's liability expert, Stephen Stoneham.  This Honorable Court's Order of December 11, 2018 (R. Doc. 43) expressly limited further discovery to the issues of "medical and vocational testimony."  The Court did not extend any deadlines for the parties to engage in additional liability discovery.  The Order does not permit the defendant to designate a purported liability expert ex post facto or generate a liability expert report for use in this case.

Plaintiff anticipates that he may file additional motions *in limine* on evidentiary issues.

**Defendant, Seadrill Americas, Inc.:**

None at this time; however, defendant may file motions *in limine*.

## BRIEF SUMMARY OF MATERIAL FACTS CLAIMED BY

### VI.

**Plaintiff, Eddie Ratliff:**

This is a Jones Act and general maritime law case involving severe, debilitating injuries to Plaintiff, Eddie Ratliff.  Ratliff is 37 years old.  At the time of the accident, Ratliff was working as an assistant driller and he had been employed by Seadrill for approximately four and one-half years.  Defendant, Seadrill, employed Ratliff and the other members of the crew of the WEST VELA.

On or about August 19, 2017, Ratliff suffered serious painful injuries to his back that have resulted in the need for surgery and other medical treatment.  At approximately 3:00 p.m. on August 19, 2017, Seadrill's tool pusher, Mr. John Atkinson, visited the vessel's pump room concerning problems with the vessel's no. 2 mud pump.  Mr. Atkinson was advised that there was

a leak in the no. 3 suction module of mud pump no. 2.  Mr. Atkinson testified that a "…wash" was discovered near the base of that module's intake valve seat ("seat") which was preventing the valve from seating and then sealing as pump no. 2 was running.  Thus, the valve seat needed to be removed from the module.

At approximately 6:00 p.m. on the date of the accident, Seadrill's night crew arrived at the rig floor and conducted changeover meeting(s) with their opposite members of the departing day crew.  Mr. Ratliff, an assistant driller on the night crew, testified that he met with the day crew's assistant driller, Mr. Desmond Hall, that the day crew had been unable un-seat the valve.  The night crew, including Mr. Ratliff, was then tasked with continuing to remove the seat from the mud pump module.

In order to perform the work of removing the seat, Mr. Ratliff testified that he was provided with an all-threaded rod and a seat-puller which was to be installed into the valve.  The all-thread rod and seat puller were to be inserted onto the valve which was to be removed.  Mr. Ratliff and his crew were to utilize a hydraulically actuated Porta-Power pancake jack for this work.  The purpose of the pancake jack was to apply hydraulic force to the seat-puller in order to remove the seat.

In order to attempt to remove the seat, Mr. Ratliff had to insert the all-thread rod and the seat puller down the shaft of the module. Mr. Ratliff had to insert his left hand down the shaft of the mud pump module and put his fingers under the seat to try to make the seat-puller flush with the seat.   Meanwhile, Mr. Ratliff had to keep his right hand higher up the length of the all-thread rod to make sure he had manual leverage to align the seat puller.    He did this while kneeling on both knees on deck grating, bending at the waste and stretching his upper-body over another pump module which was between him and module no. 3.    This was a tight space. Following is the

plaintiff's drawing of the mud pump module, with an indication of where his hands were placed and an "x" where he was kneeling on the grating:



Following is a photo of the mud pump module area where Mr. Ratliff was working at the time of the accident:



    The night crew made three unsuccessful attempts to force the valve seat from the suction

module. According to Mr. Ratliff, during these attempts they had to swap-out and use three (3)

different pancake jacks.  Mr. Ratliff testified that he had to repeat the same awkward maneuver of

inserting the all-thread rod and seat puller and applying manual leverage to the all-thread rod.

According to Mr. Ratliff, each attempt lasted 15 to 25 minutes for a total of approximately one hour to one and one-half hours in which he was required to maintain such awkward body position. Mr. Ratliff testified that Mr. Atkinson witnessed him in that awkward body position during their attempts to remove the seat, but Mr. Atkinson never told him to stop or change positions "because that's pretty much the only way you can get to it."

Mr. Ratliff and the night crew ultimately determined that the seat could not be removed. Mr. Ratliff then received a call from the driller and Mr. Atkinson instructing him to move over to pump no. 1 and investigate a possible shut down of that pump.

As Mr. Ratliff rose to his feet to move toward pump no. 1, Mr. Ratliff was experiencing pain in his back from maintaining an awkward position for so long (he had never maintained such position for such period before this incident).   Mr. Atkinson then told Mr. Ratliff to pick up a bar that was on the grating.   As Mr. Ratliff made his way toward the bar, Mr. Ratliff continued to feel discomfort and pain in his lower back.   As Mr. Ratliff reached down and started picking up the bar, Mr. Ratliff felt a pop in his lower back and fell to the ground in pain.   Mr. Ratliff had continuous pain in his lower back from the time he stood up off his knees at mud pump. no. 2 and walked across the deck grating to pick up the bar.

The accident was caused solely by Seadrill in several respects.  First, according to Seadrill's Step-by-Step Procedure for these mud pump repair operations, once it was recognized that the valve could not be removed from its seat, the toolpusher (Mr. Atkinson) should have implemented Stop Work Authority.  Seadrill's Step-by-Step procedure for the job states, in pertinent part:

> …If hydraulic removal doesn't work, notify Toolpusher who will issue appropriate permits.  Welder will then heat and add ice to shrink the seat, before attempting another pull.  In extremely difficult cases, welder may have to cut into valve seat body or cut through spoke, to stress relieve the valve seat.  In both cases, hot work will be done under Toolpusher's immediate supervision to avoid damage to pump body.

Mr. Atkinson knew that the crews (including Ratliff's crew) were having difficulty unseating the valve, yet he failed to stop work. Accordingly, the night crew, including Ratliff, was forced to continue to attempt to unseat the valve with different pancake jacks (Porta-Power) which repeatedly proved unsuccessful. Second, Seadrill should have, but did not use the industry standard Very Heavy Duty Seat Pulling Jacks which were available. Instead, Seadrill used the Porta-Power jacks which are not as powerful and which proved unsuccessful in lifting the valve from the seat. Seadrill's failing to make industry-standard Very Heavy Duty Seat Pulling Jacks available to its crew for this task forced Ratliff to try to continue to use sub-standard equipment in removing the valve from its seat, which repeatedly required Mr. Ratliff to maintain and awkward back posture, which led to his injury.

Finally, Atkinson admitted that having his crew attempt to remove the seat at that time on board the vessel was unnecessary avoidable because they could have just removed the whole module without trying to remove the seat. Seadrill ended up having to replace the whole module anyway. Seadrill was negligent in trying "to save some money" by taking the seat out first, which caused an unreasonable risk of injury to Ratliff.

Ratliff has suffered severe pain and limitations. Ratliff reported his back pain immediately to the ship's medic. He was treated conservatively on the ship with anti-inflammatory medications and then sent to shore for additional treatment with Seadrill's company physician at Bourgeois Medical Clinic in Morgan City. Dr. Bourgeois diagnosed Ratliff with a lumbar strain and placed him off work and sent him back home for further treatment and to rest prior to returning to work. Mr. Ratliff was treated by Seadrill's doctor of choice in Mississippi who cleared Mr. Ratliff to return to work, but Ratliff's pain and muscle spasms continued.

Ratliff was examined by neurosurgeon, Dr. Bradley Bartholomew, on November 30, 2017. On this initial visit with Dr. Bartholomew, Mr. Ratliff completed in his own handwriting a form that states he was injured while working the mud pumps.   The radiologist's review of the November 2017 MRI films revealed a disc herniation at L4-5 and left disc herniation with nerve root impingement at L5-S1.  Dr. Bartholomew's review of the MRI revealed an "obvious" left L5-S1 disc herniation.  Dr. Bartholomew recommended facet blocks at L4-5 and L5-S1 and confirmed that Ratliff was temporarily totally disabled from his job on the WEST VELA.  The facet blocks did not provide relief.  Dr. Bartholomew recommended an EMG and nerve conduction studies which were done in March 2018.  Dr. Bartholomew's evaluation of the EMG/NCS studies revealed pathology involving the left S1 motor root and the left L5 root.  Dr. Bartholomew recommended Ratliff undergo a microdiscectomy at L5-S1.   Dr. Bartholomew performed microdiscectomy surgery on October 1, 2018.  Ratliff was evaluated by Dr. Bartholomew on November 27, 2018. Ratliff reported occasional numbness and tingling down the left leg with some left leg pain, but mostly at night.  The pain presents to the inferior left calf when present with occasional mild low back pain.  Straight-leg testing revealed mild pain to the left calf.  Dr. Bartholomew prescribed Lyrica, a nerve and muscle pain medication, and he recommended Ratliff conduct another round of physical therapy with another follow-up appointment with Dr. Bartholomew in 4-6 weeks.  Dr. Bartholomew has recommended that Ratliff be permanently restricted from work requiring heavy lifting.  Dr. Bartholomew has now performed a two-level fusion at L4-5 and L5-S1, which was necessitated by this accident.

Ratliff was evaluated by Dr. Thomas Lyons for pain in his left knee on December 12, 2017. Ratliff reported to Dr. Lyons that he had left knee pain as a result of the accident which was made worse with prolonged sitting or standing and radiating complaints extending to the knee.  Dr. Lyons

recommended a MRI of the left knee, which revealed arthritic changes and a popliteal cyst.  Dr. Lyons recommended several types of injections and physical therapy.

Ratliff was a very high wage earner at the time of the accident.  Ratliff's pre-injury earnings base was approximately $168,075 annually at the time of the accident.  With respect to economic loss, assuming a wage base of approximately $168,075 and no residual future earnings capacity, Mr. John Terhiot of Malcolm Dienes, LLC certified public accountants, estimates that Ratliff's past and future loss of earnings after taxes are $188,044 and $2,865,178, respectively.  Assuming a wage base of approximately $168,075, and assuming Ratliff would be able to return to work at $11 per hour, Mr. Theriot estimates past and future loss of earnings after taxes are $188,044 and $2,475,141, respectively.  Mr. Theriot also calculates Mr. Ratliff's past and future fringe benefit losses at $45,107 and $687,286, respectively.  Mr. Theriot further calculates Mr. Ratliff's past and future found losses (cost of meals while working on the vessel) at $2,543 and $37,615, respectively.  Mr. Ratliff's past medical expenses are approximately $80,000, not including Dr. Shelley Savant's life care plan estimates of a total of approximately $546,600.

Seadrill may claim a 2005 lumbar MRI shows some damage to Mr. Ratliff's lower back.  In fact, the radiologist's reading of this MRI was a "central" disc herniation which did NOT involve nerve root involvement.  Mr. Ratliff received a complete unrestricted return to work and did heavy manual labor form 2005 through this accident date.  The MRI following this injury showed a LEFT sided herniation which DID impinge upon the nerves (as evidenced from Mr. Ratliff's clear complaints of burning and numbness down into his left leg and the EMG and nerve conduction studies following this accident).

**<u>Defendant, Seadrill Americas, Inc.</u>**

Plaintiff is a 37 year-old assistant driller formerly employed by Seadrill Americas, Inc.  He claims he injured his lower back on the drillship WEST VELA while lifting a 34-lb. bar.  Plaintiff filed suit against Seadrill, asserting negligence and vessel unseaworthiness claims.  Plaintiff acknowledged, though, he does not have a valid claim of vessel unseaworthiness against Seadrill Americas so that claim has been dismissed.  Plaintiff likewise cannot show that it was negligent for his employer to assign him a task that involved picking up a bar weighing only 34 lbs.

On August 19, 2017, plaintiff was working on a mud pump in the pump room of the WEST VELA.  The mud pumps push highly pressurized mud through the system during drilling operations.  Naturally, the pumps require routine maintenance and repair from time to time.

Immediately prior to his alleged injury, plaintiff and his fellow crew members were performing a repair of the gaskets on mud pump #1.  After finishing the repairs to this mud pump, plaintiff reached down to pick up a 34-lb. bar.  As he did so, he testified that he felt a "pop" in his lower back, even before he had lifted its full weight.  After he felt this pop, he claims he fell to his knees in pain.

Plaintiff has admitted that he did not slip or otherwise lose his balance, that he had been properly trained by Seadrill on proper lifting techniques and was utilizing a proper lifting technique at the time of the incident.  Further, plaintiff admitted that he had lifted this bar over 50 times prior to this incident and had always performed the task without any assistance and without difficulty.  Plaintiff had seen others lift the bar on numerous occasions, also without any assistance and without any difficulty.  In fact, plaintiff admitted lifting the bar was a one-person job.  In addition, plaintiff admitted he could have asked for assistance in picking up the bar, but he did not do so.

Plaintiff also admitted he had "stop work" authority to stop the job if he felt it was unsafe, but he did not request that work be stopped.





After plaintiff felt his back pop, he sought treatment from the rig medic for a couple of days after which time he told the medic he was completely pain free.  At this point, plaintiff returned to work for two more weeks, which was the remainder of his twenty-one day hitch.  He returned home and was essentially pain free until he reached into his clothes dryer to remove some clothes, which caused his back to lock up again and him to fall to his knees in pain.  Before retaining counsel and commencing litigation, plaintiff provided two written statements and an audio recorded statement in which he attributed his injury solely to picking up the bar.  He also gave histories to the WEST VELA's medic and to several treating physicians, and in each instance he stated only that he injured his back in the same way.

Plaintiff had never raised any other mechanism of injury.  However, half of the way through his deposition, and for the first time documented anywhere, plaintiff claimed that he was doing strenuous work an hour or so prior to the bar lifting incident.  He now attributes his injury to having done that strenuous work long before he felt a pop in his back while performing a routine task of lifting a 34-lb. bar.  Plaintiff's reinvented claim is meritless not only because it is untrue, but also because even if it was true the work he performed an hour or so prior to the lifting incident was not strenuous and Seadrill cannot be held to be negligent for requiring plaintiff to perform a simple routine task.  Further, plaintiff's allegedly strenuous work did not cause the alleged injuries that form the basis of plaintiff's claim.

Significantly, plaintiff's fellow crew members will not only testify that plaintiff was not working strenuously or in an awkward position an hour or so before his back popped, as he now claims, but they will testify that it is not necessary to do what plaintiff claims he was doing and more importantly that it is physically impossible to do what plaintiff claims he was doing.

After returning home, it was not until after the laundry incident that he sought treatment from a chiropractor.  Thereafter, he was referred by his legal counsel to neurosurgeon Dr. Bradley Bartholomew.  Plaintiff underwent facet injections, which he claimed did not help.  On October 2, 2018, plaintiff underwent a successful microdiscectomy at L5-S1, an area of his lumbar spine that had plagued plaintiff with injuries and pain for over a decade.  Indeed, plaintiff suffered a disc herniation in 2005 and had numerous work incidents that resulted in severe pain in his lower back. This 2005/2006 lower back injury resulted in a trip to the emergency room and an MRI, which revealed the disc herniation at L5-S1. This is the exact same level of plaintiff's alleged current injury and the exact same location of the microdiscectomy procedure.  In 2014, while employed by Seadrill, plaintiff injured his lower back again while working on mud pumps.  This lower back injury was so painful plaintiff had to visit the emergency room and seek treatment from a physician.  Plaintiff has not returned to work since the August 19, 2017 incident.

Plaintiff was not injured as he claimed, and, in any event, plaintiff cannot establish that anything that Seadrill did or did not do is in any way negligent.  Requiring a seaman to perform manual labor, including simple, routine tasks and lift a 34-lb. bar, cannot and does not constitute negligence.

## JOINT UNCONTESTED MATERIAL FACTS

### VII.

1.      On or about August 19, 2017, Eddie Ratliff was working on the WEST VELA as an assistant driller.

2.      Seadrill Americas, Inc. employed Ratliff and the members of the crew of the WEST VELA.

3.      This lawsuit arises out of an alleged incident that occurred on or about August 19, 2017 when plaintiff claims to have injured his back while working aboard the WEST VELA.

4.      At the time of the incident, plaintiff was employed by Seadrill Americas, Inc. as an assistant driller.

5.      At the time of the incident, and at all material times, plaintiff was a Jones Act seaman.

## JOINT CONTESTED MATERIAL FACTS

### VIII.

1.      Whether plaintiff had any pre-existing conditions on August 19, 2017.

2.      Whether, while working aboard the WEST VELA, plaintiff attempted to pick up a metal bar.

3.      Whether the metal bar that plaintiff was attempting to lift weighed less than 50 lbs.

4.      Whether the metal bar that plaintiff was attempting to lift was approximately 3 ½ feet in length.

5.      Whether Plaintiff had lifted this metal bar on over 50 occasions prior to this incident without any assistance.

6.      Whether Plaintiff was properly trained by Seadrill on proper lifting techniques and was utilizing proper lifting techniques at the time of his alleged incident.

7.      Whether Plaintiff had seen others lift the metal bar in the past without any assistance about 30-40 times.

8.      Whether Plaintiff had never seen two people work together to pick up the metal bar.

9.      Whether Plaintiff considered picking up the metal bar to be a one-person job.

10.     Whether Plaintiff could have asked for assistance in picking up the metal bar, but did not elect to do so.

11.     Whether as plaintiff attempted to lift the bar, he felt a pop in his back and thereafter he fell to the ground in pain.

12.     Whether plaintiff's alleged injury was caused by plaintiff attempting to pick up a metal bar.

13.     Whether any negligence of defendant was a cause of plaintiff's injuries.

14.     Whether plaintiff sustained any injuries as a result of an accident aboard the WEST VELA on or about August 19, 2017.

15.     The nature and extent of plaintiff's injuries.

16.     Whether plaintiff's injuries were caused by any events occurring before or after he attempted to lift the metal bar on August19, 2017.

17.     Whether plaintiff's medical treatment and other actions in the aftermath of the accident were driven by a desire to maximize his recovery in a lawsuit.

18.     Whether plaintiff's injuries required surgical intervention.

19.     Whether plaintiff's current medical condition is a result of the injuries sustained while working for Seadrill.

20.     Whether plaintiff can engage in the activities of life which he used to perform, and to what extent.

21.     Whether plaintiff is owed damages for past and future pain and suffering, past and future lost wages, past and future lost earning capacity, or past and future medical expenses.

22.     Whether plaintiff's negligence, if any, contributed to his injuries.

23.     Whether plaintiff has acted reasonably to mitigate his alleged damages.

24.     Whether plaintiff can return to work.

25.     Whether and to what extent there has been an historic decline in the offshore
drilling industry such that it is unlikely plaintiff would have continued to work offshore
until the end of his statistical work life expectancy.

26.     The facts and circumstances surrounding the plaintiff's accident.

27.     The cause of the plaintiff's accident.

28.     On or about August 19, 2017, Mr. Ratliff suffered an injury to his lower back.

29.     The nature and extent of plaintiff's injuries and disability.

30.     The nature and extent of any vocational losses experienced by the plaintiff.

31.     The amount of damages, if any, to which plaintiff is entitled.

32.     Whether Seadrill was negligent in failing to provide Mr. Ratliff with a reasonably
safe place to work.

33.     Whether there is a causal connection between Seadrill's alleged negligence and
Mr. Ratliff's alleged injury.

34.     Whether Mr. Ratliff is capable of returning to work offshore.

35.     Quantum.

36.     Whether the plaintiff has reached MMI.

37.     Whether Seadrill has fulfilled its obligation to pay maintenance and cure to
plaintiff from the date of the incident to present.

38.     The amount of damages, if any, to which plaintiff is entitled.

39.     The extent of plaintiff's general and special damages.

40.     The extent of plaintiff's economic loss.

41.     Whether the alleged accident caused plaintiff's alleged damages.

## CONTESTED ISSUES OF LAW

### IX.

1.  Nature, extent and cause of any injuries and disability to plaintiff.

2.  Compensatory damages.

3.  Quantum.

4.  Whether the plaintiff carried his burden to mitigate his damages.

5.  Whether the plaintiff is entitled to general damages or special damages.

6.  Whether Seadrill was negligent.

7.  Whether Seadrill's negligence was the cause-in-fact of plaintiff's injuries.

8.  Whether Seadrill has complied with its maintenance and cure obligations.

9.  All other issues of law employing the foregoing contested issues of fact, summaries of material facts, and pleadings.

10. Those issues of law which are explicit in the foregoing contested issues of fact and/or summaries of material fact.

## EXHIBITS

### X.

**Plaintiff, Eddie Ratliff:**

**Plaintiff's Un-Objected To Exhibits:**

1.     American Claims Information Sheet; (PL 0001-0001)

2.     HSE Event -Personal Injury; (PL 0002-0005)

3.     Statement of Personal Injury; (PL 0006-0006)

4.      Hydraulic Hand pump instruction sheet; (PL 0373-0379)

5.      JSA - Permit to Work-Task Risk Assessment form; (PL 0380-0382)

6.      Operation Maintenance and Maintenance checklist; (PL 0383-0384)

7.      Permit to work form; (PL 0385-0385)

8.      Person on Board list; (PL 0386-0391)

9.      Pre Tour Minutes; (PL 0392-0394)

10.     Rig general arrangement plan; (PL 0395-0395)

11.     Schematic mud pumps; (PL 0396-0397)

12.     Schematic of pump room; (PL 0398-0398)

13.     Seadrill Debrief 8.20.17; (PL 0399-0399)

14.     Task Risk Assessment, Directives, and Permit to Work forms; (PL 0400-0869)

15.     Seadrill Work orders; (PL 0875-0876)

16.     Seadrill Photographs; (PL 000887 – 00880,  902- 922, 923 – 940)

17.     Seadrill Personnel records of plaintiff; (PL 0941-1525)

18.     Seadrill Payroll Records; (PL 1884 – 1922)

19.     Seadrill Safety Manual; (PL 1526-1551)

20.     Seadrill WEST VELA Vessel log; (PL 1563-1563)

21.     Plaintiff's Seadrill Paystub 08-28-17; (PL 1564-1565)

22.     Seadrill Maintenance and Cure Payments 10-30-17; (PL 1566-1569)

23.     Plaintiff's 2016 W-2 from Seadrill; (PL 1570-1570)

24.     Seadrill 2017 Benefit Choices - Who Pays; (PL 1571-1571)

25.     Plaintiff's 2013-2017 Earnings Summary; (PL 1572-1600)

26.     Seadrill fringe benefit monthly amounts; (PL 1601-1601)

27.   Plaintiff's IRS Records from 2012 thru 2016; (PL 1602-1675)

28.   Plaintiff's SSA Records from 2006 thru 2017; (PL 1676-1681)

29.   Plaintiff's W2 forms from Seadrill 2013 thru 2017; (PL 1682-1687)

30.   Seadrill Assistant Driller Job Description; (PL 1872 – 1874)

31.   Seadrill Manuals & Procedures; (PL 1969 – 2360)

32.   Complete copy of any and all medical records, therapy records, medical reports, medical
      invoices or bills, medical films including x-rays or MRIs, or other written
      documentation relating to plaintiff=s past and future medical treatment including but not
      limited to any and all documents, medical records, films or other materials from the
      following healthcare providers:

      a.   Bradley Bartholomew, M.D. SEADRILL 850-900; (PL 000148 – PL000237)

      b.   Omega Hospital and Physicians; (PL 000305 – 000315)

      c.   Bourgeois Medical Clinic; (PL 000100 - 000115)

      d.   Magnolia Diagnostics; (PL 000286 – 000286; 2474 - 2475)

      e.   Thomas Lyons, M.D., Orthopedic Center for Sports Medicine; SEADRILL
           2121-2122 (PL 000238 – 000245)

      f.   Daniel Trahant, M.D. SEADRILL 2039-2048 (PL 246-260)

      g.   Covington County Hospital; (PL 000116-000147)

      h.   Merit Health Wesley; (PL 000287 – 000304)

      i.   LA Health Solutions; SEADRILL 2089-2120; (PL 1767 – 1798)

      j.   Acadiana Center; SEADRILL 2049 – 2075 (PL 000557 – 000563)

      k.   Fred's Pharmacy; SEADRILL 1006-1007 (PL 000316 – 000318)

      l.   Walgreens Pharmacy; (PL 000319 – 000319)

m.  Medical Records received from Defense; (PL 1727 – 1817)

n.  Ralph R. Katz, M.D., Westside Orthopedic Clinic; (PL 2466-2473)

33.  Any and all documents or sources relied upon by any experts in this matter including John W. Theriot, Shelly Savant, Joyce Beckwith, Gregg Perkin and Garrett Perkin. Such exhibits include but are not limited to, government sources and publications relied upon by such experts, interest rate tables, and any other documents as relied upon or referenced by such experts;

34.  Any exhibits attached to any witness depositions including the deposition of the plaintiff; (PL 1818 – 18368; PL 1923 – 1968; PL 2361 – 2381)

35.  Any drawings attached to any witness depositions including the deposition of plaintiff; (PL 1820, 1825, 1826, 1827, 1833, 1925, 1966, 1967, 1968)

**<u>Plaintiff's Objected To Exhibits:</u>**

1.  Email file produced by Seadrill; (PL 0325-0372) – Defendant objects based on hearsay

2.  Certificate of Compliance USCG; (PL 0320-0324) – Defendant objects based on relevancy, prejudice and hearsay

3.  USCG inspection records of WEST VELA; (PL 0870-0874) - Defendant objects based on relevancy, prejudice and hearsay

4.  Seadrill Tool pusher Job Description; (PL 1881 – 1883) - Defendant objects based on relevancy

5.  Seadrill Driller Job Description; (PL 1875 - 1877) - Defendant objects based on relevancy

6.      Seadrill Assistant Derrickman Job Description; (PL 1869 – 1871) - Defendant objects based on relevancy

7.      Seadrill Roughneck Job Description; (PL 1878 – 1880) - Defendant objects based on relevancy

8.      File #48786 Audio statement; (PL 1726) - Defendant objects based on relevancy

9.      Defendant's responses to discovery and all attachments thereto; (PL 1688-1723) - Defendant objects based on relevancy

**Defendant, Seadrill Americas, Inc.**

**Defendant's Un-Objected To Exhibits:**

1.      The various tools and equipment Eddie Ratliff and his fellow crew members were using at the time of the incident, including put not limited to the subject metal bar, mud pump module (including cap and internal parts), block, all thread bolt with nuts and seat plate, pancake jack and hydraulic pump.  These tools and equipment will be brought to trial, but are also depicted in SEADRILL 25-28, SEADRILL 828-848 and 2620-2367.

2.      Statement of personal injury (SEADRILL 4)

3.      ACSI preliminary report (SEADRILL 5-6)

4.      ACSI Information Sheet (SEADRILL 9)

5.      Synergi Report with attachments (SEADRILL 21-32)

6.      Personnel on board list (SEADRILL 33-37)

7.      Maintenance and cure records (SEADRILL 38-57 & 64 & 3266)

8.      Herrington Chiropractic Clinic records (SEADRILL 58 and 3078-3086)

9.      Call-In Sheet (SEADRILL 63)

10.     West Vela Medic emails and records (SEADRILL 65-71 & 2086-2088)

11.     Personnel file (SEADRILL 72-218)

12.     W-2s (SEADRILL 219-224)

13.     Seadrill's Manual Lifting Manual/Powerpoint (SEADRILL 225-250)

14.     Assistant Driller Description (SEADRILL 281-283)

15.     Medical Information (SEADRILL 293)

16.     Seadrill 2017 Benefits Guide (SEADRILL 327-345)

17.     August 19, 2017 Deck Log (SEADRILL 346)

18.     Benefits summary (SEADRILL 461)

19.     Advanced Pharmacy records (SEADRILL 540-546)

20.     Magnolia Diagnostics records (SEADRILL 557-566 and 3645-3658)

21.     Covington County Hospital records (SEADRILL 567-593 and 819-823)

22.     CVS records (SEADRILL 594-596)

23.     Walgreens records (SEADRILL 680-682)

24.     Bourgeois Medical Clinic records (SEADRILL 683-696)

25.     Orthopedic Center for Sports Medicine and Reconstructive Surgery records (SEADRILL 697-736 & 2121-2122 & 3143-3167)

26.     Omega Hospital records (SEADRILL 759-818)

27.     8-317 Permit to Work and TBRA (SEADRILL 824-827)

28.     Photographs (SEADRILL 828-848)

29.     Dr. Bradley J. Bartholomew records (SEADRILL 849-899, 3168-3229, 3594-3644, 3700 & 3708-3717)

30.     Fred's Pharmacy records (SEADRILL 1006-1009)

31.     NewSouth Neurospine records (SEADRILL 1010-1019)

32.    The Family Practice After Hours Clinic records (SEADRILL 1020-1033)

33.    Medical Information Sheet (SEADRILL 1034-1035)

34.    Dr. Daniel Trahant records (SEADRILL 2039-2048)

35.    Acadiana Center for Orthopedic and Occupational Medicine records (SEADRILL 2049-2075)

36.    Social Security Administration records (SEADRILL 2076-2085)

37.    LA Health Solutions records (SEADRILL 2089-2120)

38.    Permit to Work Forms and Step-by-Step Procedures (SEADRILL 2412-2611)

39.    General Arrangement (SEADRILL 2612)

40.    Mud Pump General Arrangement (SEADRILL 2613)

41.    Mud Pump Drawings (SEADRILL 2614-2619)

42.    Mud Pump Room Photographs (SEADRILL 2620-2637)

43.    Pre-Tour Minutes August 20, 2017 (SEADRILL 2638-2639)

44.    Step-by-Step Procedure (SEADRILL 2641-2657)

45.    Mud Pump Manuals (SEADRILL 2658-3032)

46.    Eddie Ratliff's Seadrill Payroll Records (SEADRILL 3033-3061)

47.    Hydraulic Pumps instruction sheet (SEADRILL 3062-3068)

48.    Forrest General Records (SEADRILL 3117-3133)

49.    Plaintiff's IRS records (SEADRILL 3267-3340)

50.    Caleb's Hometown Pharmacy Records (SEADRILL 3589-3593 and 3701-3702)

51.    Restore Physical Therapy Records SEADRILL 3569-3699)

**Defendant's Objected-To Exhibits:**

1. Eddie Ratliff audio recording 9-28-2017 (SEADRILL 1) (OBJECTION:  Hearsay, relevance, unfairly prejudicial)

2. Eddie Ratliff audio recording file #44440 (SEADRILL 2) (OBJECTION:  Hearsay, relevance, unfairly prejudicial)

3. 9-28-2017 audio recording transcription (SEADRILL 10-20) (OBJECTION:  Hearsay, relevance, unfairly prejudicial)

4. November 22, 2014 back injury incident records (SEADRILL 251-266) (OBJECTION: Hearsay, relevance, unfairly prejudicial)

5. Eddie Ratliff's employment file from Spartan Offshore Drilling (SEADRILL 462-539) (OBJECTION: Hearsay, relevance)

6. Eddie Ratliff's employment file from Pierce (SEADRILL 547-556) (OBJECTION: Hearsay, relevance)

7. Eddie Ratliff's employment file from Hercules Offshore (SEADRILL 597-679) (OBJECTION: Hearsay, relevance)

8. Eddie Ratliff's employment file from Ensco (SEADRILL 900-994) (OBJECTION: Hearsay, relevance)

9. Finlo Construction employment records (SEADRILL 995) (OBJECTION: Hearsay, relevance)

10. Pearl River Community College transcript (SEADRILL 997) (OBJECTION: Hearsay, relevance)

11. UNUM records (SEADRILL 1036-2038) (OBJECTION: Hearsay, relevance, collateral source)

12. Dr. Katz's report with addenda (SEADRILL 2140-2147, 3230-3234 & 3703-3707) (OBJECTION:  Hearsay, relevance)

13. Divorce records (SEADRILL 3096-3108)  (OBJECTION:  Hearsay, relevance, unfair prejudice)

14. Gym Records (SEADRILL 3134-3141) (OBJECTION:  Hearsay, relevance)

15. Plaintiff's Complaint (SEADRILL 3235 - 3243) (OBJECTION:  Relevance)

16. Defendant's Answer (SEADRILL 3244-3246) (OBJECTION:  Relevance)

17. Plaintiff's responses to discovery (SEADRILL 3247-3265) (OBJECTION:  Relevance)

18. Plaintiff's deposition and exhibits (SEADRILL 3341-3566) (OBJECTION: Inadmissible unless used for impeachment, hearsay, relevance)

19. Plaintiff's initial disclosure (SEADRILL 3567-3571) (OBJECTION: hearsay, relevance).

20. Ratliff deposition transcript and exhibits (SEADRILL 3314-3566) (OBJECTION: Inadmissible unless used for impeachment, hearsay, relevance)

21. Ratliff's initial disclosures (SEADRILL 3567-3571) (OBJECTION: hearsay, relevance and non-specific)

22. Divorce proceeding records (SEADRILL 3572-3588) (OBJECTION: hearsay, relevance, unfair prejudice)

## **DEPOSITION TESTIMONY**

### **XI.**

All parties reserve the right to offer into evidence the deposition of any witness beyond the subpoena power of this Honorable Court and/or any other witness unavailable for trial, or any

witness whose deposition has been taken in this matter, as permitted by the Federal Rules of Civil Procedure.

**Plaintiff, Eddie Ratliff:**

Plaintiff anticipates offering the depositions of any witness not available for trial in this matter or beyond the subpoena power of this Honorable Court.  Plaintiff also reserves the right to use any deposition testimony for impeachment purposes.  At this time, Plaintiff intends to submit the deposition testimony of the following witnesses:

1.   John Atkinson, Toolpusher – 1190 Maynor Creek Road, Waynesboro, MS 39367 – Seadrill employee to testify concerning the facts and circumstances surrounding the accident, plaintiff=s job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

2.   Bubba Clark, Roughneck  – 693 Natural Gas Road, Logansport, LA 71049 - Seadrill employee to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

3.   Justin Davidson, Assistant Derrickman – 113 South Grace Street, Crockett, TX 7583571486 – Seadrill employee to testify concerning the facts and circumstances surrounding the accident, plaintiff=s job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

4.   Nick Faust, Driller – 956 Garcie Road, Zwolle, LA 71486 – Seadrill employee to testify concerning the facts and circumstances surrounding the accident, plaintiff=s job duties, performance and abilities prior to the accident, all facts and circumstances surrounding

the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

5.    Robert Hunter, Rig Medic employed by Safety Management Systems, 8139 Walnut Creek Lane, Charlotte, NC 28227 – fact witness to testify concerning the facts and circumstances surrounding the accident, medical treatment, plaintiff=s job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages;

6.    Michael Ryan Webb, Roughneck – 2117 Briarwood Road, Gilbertown, AL 36908 – Seadrill employee to testify concerning the facts and circumstances surrounding the accident, plaintiff=s job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages.

**Defendant, Seadrill Americas, Inc.:**

Seadrill anticipates offering the depositions of any witness not available for trial in this matter or beyond the subpoena power of this Honorable Court.  Seadrill also reserves the right to use any deposition testimony for impeachment purposes.   Further, defendant may use the depositions of John Atkinson, Eddie Ratliff, Danielle Ratliff, Robert Hunter, Justin Davidson, Bubba Clark, Nicholas Faust and Michael Webb.

## CHARTS, GRAPHS, MODELS, ETC.

## XII.

Both plaintiff and defendant reserve the right to use charts, graphs, drawings, models, photographs, and other materials during argument.

Both plaintiff and defendant intend to use enlarged copies and/or electronically displayed copies of their listed exhibits.  Both parties reserve the right to use a blackboard, photographs, sketches, charts, graphs, models, schematic diagrams, blow-ups of exhibits and/or similar objects in opening statements, witness interrogation, and/or closing arguments.

Both parties will have available for inspection by the opposing party at least three full working days prior to trial any demonstrative exhibits, timelines, graphics or charts and, if there is any objection as to their use, the dispute will be submitted to the Court at least two full working days prior to trial in accordance with Section IX (12) (b) of this Court's Pre-Trial Notice.

## WITNESS LIST

## XIII.

The witness lists are filed in accordance with prior court orders.

**Plaintiff in good faith believes he will call the following witnesses:**

1.  Eddie J. Ratliff, 805 Seminary Williamsburg Road, Collins, MS 39428 – fact witness to testify concerning all facts surrounding his workplace injury, his medical treatment, his damages, and all other issues relevant to the claims asserted by him in this litigation;

2.  Danielle Renee´ Ratliff  – 805 Seminary Williamsburg Road, Collins, MS 39428 –fact witness to testify concerning how the accident made basis of this litigation has affected plaintiff;

3.  Joyce C. Beckwith, MS, LRC, CRC, Conservant Healthcare, P.O. Box 804466, Lafayette, LA - vocational rehabilitation counselor to provide expert testimony concerning loss of wage earning capacity sustained by plaintiff, plaintiff's vocational assessment for future employment including areas of employment and plaintiff's wage earning capacity in light of his injury, surgery, background, area in which he lives and physical limitations;

4.  Shelly Savant, M.D., Conservant Healthcare, P.O. Box 804466, Lafayette, LA - neurologist to provide expert testimony concerning the nature and extent of plaintiff's neurological injuries, and all complications, disabilities and symptom related thereto, as well as lifecare plan and need for future medical treatment;

5.  Garrett Perkin, CSP, OHST, or Gregg Perkin, P.E. of Engineering Partners International 1310 Kingwood Drive, Kingwood, TX – safety expert to provide expert testimony concerning all issues of negligence, liability, dangerous acts, actions below

the standard of care in the industry and all issues of negligence or liability on the part of the defendants as well as any alleged comparative fault on the part of plaintiff;

6.   John Theriot, Jonathan Stoltz, or Jason Schellhaas of Malcolm M. Dienes, LLC – 611 N. Causeway Blvd, Metairie, LA: economist to provide expert testimony concerning the present day value of plaintiff's loss of past and future wages, fringe benefits and other financial losses as a result of plaintiff's injury and subsequent restrictions;

7.   Dr. Bradley Bartholomew, 2600 N. Hullen, Metairie, LA - Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issues concerning plaintiff=s medical treatment or physical condition;

8.   Dr. Thomas Lyons, 4921 Airline Drive, Metairie, LA - Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issues concerning plaintiff=s medical treatment or physical condition;

9.   Dr. Daniel Trahant, 3901 Houma Blvd., Metairie, LA - Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issues concerning plaintiff's medical treatment or physical condition.

**Defendant in good faith believes he will call the following witnesses:**

1.   Plaintiff, Eddie Ratliff, 805 Seminary Williamsburg Road, Collins, MS 39428 - Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

2.   Michael Ryan Webb, 2117 Briarwood Road, Gilbertown, AL 36908 – Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

3.   Justin Davidson, Seadrill Americas, Inc., 113 South Grace Street, Crockett, TX 75835 – Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

4.   Brad Northcutt, Seadrill Americas, Inc., 110 Pebble Cove, Hawkins, TX 75765– Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

5.   Nic Faust, Seadrill Americas, Inc., 956 Garcie Road, Zwolle, LA 71486 – Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

6.   John Atkinson, Seadrill Americas, Inc., 1190 Maynor Creek Road, Waynesboro, MS 39367 – Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

7.   Amanda Bratton, Seadrill Americas, Inc., 11025 Equity Dr., Houston, TX 77041– Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

8.   Rebecca Owens, Seadrill Americas, Inc., 11025 Equity Dr., Houston, TX 77041– Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and Seadrill's operations, policies and procedures.

9.   Robert Tim Hunter, Safety Management Systems, LLC, 8139 Walnut Creek Lane, Charlotte, NC 28227– Testimony regarding the facts and circumstances surrounding plaintiff's alleged accident and injuries, SMS's operations, policies and procedures and his treatment of plaintiff.

10.   Jeannette Brashear, York Risk Services Group, #8 Storehouse Lane, Suite A, Destrehan, LA 70047 – Testimony regarding the facts and circumstances surrounding plaintiff's treatment, York's investigation, operations, policies and procedures and payment of maintenance and cure.

11.   Cleveland J. Marcel, York Risk Services Group, #8 Storehouse Lane, Suite A, Destrehan, LA 70047 – Testimony regarding the facts and circumstances surrounding plaintiff's treatment and York's investigation, operations, policies and procedures.

12.   James Daigle, York Risk Services Group, #8 Storehouse Lane, Suite A, Destrehan, LA 70047 – Testimony regarding the facts and circumstances surrounding plaintiff's prior back injury incident and York's investigation, operations, policies and procedures.

13.   Dr. Brandon Herrington, Herrington Chiropractic Clinic, 4700 Handy St., Suite M-1, Hattiesburg, MS 39402 – Testimony regarding plaintiff's alleged injuries and treatment.

14.   Dr. Robert Bourgeois, 1201 Kenneth St., Morgan City, LA 70380 – Testimony regarding plaintiff's alleged injuries and treatment.

15.   Dr. Donald Thibodaux, 1201 Kenneth St., Morgan City, LA 70380 – Testimony regarding plaintiff's alleged injuries and treatment.

16.     Dr. Thomas R. Lyons, 4921 Airline Dr., Metairie, LA 70001 – Testimony regarding plaintiff's alleged injuries and treatment.

17.     Dr. Bradley Bartholomew, 2600 N Hullen St., Metairie, LA 70002 – Testimony regarding plaintiff's alleged injuries and treatment.

18.     Dr. Ralph Katz, 1301 Barataria Blvd., Marrero, LA 70072 – Defendant's consulting orthopedic surgeon – Testimony regarding plaintiff's alleged injuries and treatment.

19.     Nancy Favaloro, 1615 Poydras St # 1040, New Orleans, LA 70112 – Defendant's consulting vocational rehabilitation expert – Testimony regarding plaintiff's vocational rehabilitation.

20.     Kenneth J. Boudreaux, Ph.D., Dan Cliffe, CPA, J. Stuart Wood, John R. Page, 1424 Bordeaux St., New Orleans, LA 70115 – Defendant's consulting economist – Testimony regarding plaintiff's alleged economic damages.

21.     Stephen Stoneham - Breen Rd., Houston, TX 77086 - Expert testimony regarding plaintiff's claimed actions on the date of the incident and proper procedures for maintaining and repairing mud pumps and mud pump modules

## JURY/NON-JURY STATEMENT

### XIV.

This matter is a jury case as to all aspects of the case.

Counsel will prepare a **joint statement of the case** which will be read by the Court to the prospective panel of jurors prior to the commencement of voir dire. The statement should not be more than two or three paragraphs. The statement will be filed with the Court no later than **5:00 p.m. five working days** prior to trial.

Proposed jury instructions are to be filed no later than **5:00 p.m. five working days** prior to trial. The parties must file **joint jury instructions**. The parties will meet and confer sufficiently in advance of the required submission date in order to prepare the joint jury instructions. The instructions must include citations to relevant legal authority. The instructions should be set forth in the order in which the parties wish to have the instructions read.

In the event that agreement cannot be reached on all jury instructions, counsel shall provide alternate versions with respect to any instruction in dispute. Each party should note its reasons for putting forth an alternative instruction and the law in support thereof. Counsel must submit electronic versions (in Word format) to the Court no later than **5:00 p.m. five working days before trial** at the following email address: efile-Morgan@laed.uscourts.gov, and must deliver 2 courtesy copies to Chambers.

A **joint proposed jury verdict form** is to be filed no later than **5:00 p.m. five working days** prior to trial. The parties shall meet and confer in advance of the required submission date in order to prepare the joint proposed jury verdict form. In the event that agreement cannot be reached, the parties shall file (1) separate proposed jury verdict forms; and (2) a joint memorandum explaining the disagreements between the parties as to the proposed jury verdict form.

Any **proposed special voir dire questions** are to be filed by each counsel no later than **5:00 p.m. five working days** prior to trial.

## LIABILITY AND DAMAGES ISSUE

### XV.

The issue of liability will not be tried separately from that of quantum.

## OTHER MATTERS

### XVI.

The parties are unaware at this time of any other matters that might expedite a disposition of this case.

## TRIAL

### XVII.

Trial shall commence on Tuesday, May 28, 2019 at 9:00 a.m.  It is estimated that the trial of this matter will last four (4) days.

## PRE-TRIAL ORDER STATEMENT

### XVIII.

This pre-trial order has been formulated after a conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## POSSIBILITY OF SETTLEMENT

### XIX.

The parties held a settlement conference with Judge Van Meerveld on November 26, 2018 and mediation on April 30, 2019.  The parties have not been able to reach a settlement.

## SIGNATURES

### XX.

New Orleans, Louisiana, this _____day of May, 2019.


_____
UNITED STATES DISTRICT COURT JUDGE

Respectfully Submitted:

*/s/ Joseph B. Marino, III*
**TIMOTHY J. YOUNG (22677)**
**TAMMY D. HARRIS (29896)**
**MEGAN C. MISKO (29803)**
**JOSEPH B. MARINO, III (29966)**
The Young Firm
400 Poydras St., Suite 2090
New Orleans, LA  70130
Telephone:  (504) 680-4100
Fax:  (504) 680-4104
Email: tjy@theyoungfirm.com
tdh@theyoungfirm.com
mcm@theyoungfirm.com
jbm@theyoungfirm.com
*Attorneys for Plaintiff, Eddie Ratliff*

Respectfully submitted,

PHELPS DUNBAR LLP

*/s/ Michael Held*
Gary A. Hemphill, LA Bar 6768
Michael F. Held, LA Bar 37466
365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: gary.hemphill@phelps.com
      heldm@phelps.com
*Attorneys for Defendant, Seadrill Americas, Inc.*